IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                    *
TILLIE PIERCE HOUSE, LLC                  *    CHAPTER 7
t/d/b/a TILLIE PIERCE HOUSE               *
BED & BREAKFAST,                          *
          Debtor                          *
                                          *    CASE NO. 1:10-bk-07357MDF
JERZY WIRTH,                              *
          Movant                          *
                                          *
     v.                                   *
                                          *
TILLIE PIERCE HOUSE, LLC                  *
t/d/b/a TILLIE PIERCE HOUSE               *
BED & BREAKFAST,                          *
          Respondent                      *

## OPINION

Before me is the "Motion for Payment of Escrowed Tax Moneys" filed by Jerzy Wirth

("Wirth") against Tillie Pierce House, LLC ("Debtor").  In his Motion, Wirth seeks the release of

funds held by Lawrence G. Frank, Esquire ("Frank"), the trustee of Debtor's Chapter 7 estate.

For the reasons that follow, the Motion will be denied.

### I.  Factual and Procedural Background

Debtor filed a Chapter 11 bankruptcy petition on September 9, 2010.  At that time,

Debtor was operating a bed and breakfast in Gettysburg, Pennsylvania.  Wirth is a creditor of the

estate whose claim was secured by two mortgages against real property at the time the petition

was filed.

On October 2, 2010, Wirth filed a Motion for Relief from the Automatic Stay, alleging

that Debtor had no equity in the property and that it was not necessary for an effective

reorganization.  Debtor and Wirth resolved the dispute by executing a stipulation in which they

agreed that Debtor would make monthly adequate protection payments to Wirth of $2250. They also agreed that Debtor would set up an escrow account with its counsel for the payment of real estate taxes. Under the terms of the stipulation, beginning November 1, 2010, Debtor was required to pay into escrow monthly payments equal to 1/12 of the annual property taxes. If the escrow payments were not made, or if Debtor otherwise defaulted under the stipulation, default could be certified to the Court unless the default was cured within ten days after notice. If Wirth certified default, the stipulation provided that "the Court may enter an Order . . . granting Wirth relief from stay" so he could pursue his remedies in state court. The stipulation did not specify how funds were to be disbursed from the account.

On January 4, 2011, Wirth filed a certification that Debtor had defaulted on the stipulation.  Two days later an order was entered authorizing Wirth to pursue his state law remedies.

After the automatic stay was lifted, the United States Trustee filed a motion requesting conversion of the case to Chapter 7. On May 2, 2011, the case was converted to Chapter 7, and Frank was appointed as trustee.

On May 16, 2011, Wirth, acting pro se,[1] filed the motion that is now before me.  Wirth requested that "[t]he Court Order Robert E. Chernicoff, Esq., Attorney for the Tillie Pierce House, LLC, to immediately release the $891.60 property tax money that he has been holding in escrow, as per the Stipulation, to Jerzy Wirth . . . or . . . the taxing authority."  Frank filed an answer to Wirth's motion, pointing out that the stipulation was silent as to the disposition of

--------

[1]Wirth was represented when he filed the Motion for Relief from the Stay, as well as when the parties settled the matter through stipulation.

funds held in the escrow account if Debtor defaulted on the stipulation. Frank requested that Wirth's motion be denied. A hearing was held on Wirth's motion on June 13, 2011, and the matter was taken under advisement. It is now ready for decision.[2]

## II. Discussion

The question before me is relatively straightforward – does Wirth or the taxing authority have a direct claim against the "escrow" account when the Stipulation is silent as to the disposition of the funds[3] in the event of default?

Wirth first argued that the taxing authority had a claim against the escrowed funds. He reasoned that because the stipulation was executed while the case was still in Chapter 11 for the purpose of paying taxes, conversion of the case to Chapter 7 should not affect the disposition of the funds. Wirth's argument has no merit in light of the plain terms of the Bankruptcy Code.

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 . . . shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d). In other words, a claim that arises after a Chapter 11 bankruptcy case is filed but before the case is converted to Chapter 7 is treated as a prepetition claim. Here, the "escrow" account was created by the terms of the stipulation after the Chapter 11 petition was filed for the payment of current tax obligations. Accordingly, when the case converted to Chapter 7, any

---

[2]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes the findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, which is made applicable to contested matters by Fed. R. Bankr. P. 9014.

[3]At the hearing of this case, Frank indicated that there was no written escrow agreement and that the terms of the stipulation governed the rights of the parties.

3

claim the taxing authority had for post-petition taxes must be treated as if the claim arose immediately before the filing date of the Chapter 11 petition. As such, unpaid post-petition, pre-conversion taxes are treated as a pre-petition claim.

At the hearing, Wirth alleged a second theory – that the escrow account constitutes a trust for the payment of property taxes and that funds held in the account should not become property of the Chapter 7 estate upon conversion. Wirth cited no cases to support his position. Rather, he argued simply that the "plain language" of the stipulation made it unmistakably clear that the funds should go to the taxing authority. Despite Wirth's conviction, the stipulation only addresses the creation of the escrow account. It is completely silent as to the disposition of the funds in the event of a default. Moreover, the stipulation does not purport to create a "trust," appoint a "trustee," or name a beneficiary. It simply directs Debtor to establish an "escrow account" with its counsel and specifies the amount of funds to be deposited into the account. Under Pennsylvania law, not all escrow accounts are trusts. I will discuss why this is true in this case.

An "escrow" is "[a] legal document (such as a deed), money, stock or other property delivered by the grantor . . . *into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee. . . .*" Black's Law Dictionary, 545 (6th ed. 1990), *quoted in Knoll v. Butler*, 675 A.2d 1308, 1312 (Pa. Commonwealth Ct. 1996). In contrast, "an express trust is established when four elements are present: (1) an express intent to create a trust; (2) an ascertainable *res*; (3) a sufficiently certain beneficiary; and (4) a trustee who 'owns' and administers the *res* for the benefit of the beneficiary." *In re Coley*, 433 B.R. 476, 495 (Bankr. E.D. Pa. 2010) (citing *In re*

4

*Marques,* 358 B.R. 188, 194 (Bankr. E.D. Pa. 2006)). Cases discussing these instruments have highlighted important distinctions between an escrow and a trust under Pennsylvania law.

The grantor under an escrow agreement retains legal title to the escrow funds until the contingency occurs or the condition is performed. Only then does title to the escrowed funds transfer to the grantee. *In re Mushroom Transp. Co., Inc.*, 282 B.R. 805, 817 (E.D. Pa. 2002), *aff'd in part and rev'd in part on other grounds*, 382 F.3d 325 (2004). When an express trust is created, however, the trustee immediately obtains legal title to the property. *Schellentrager v. Tradesmens Nat'l Bank & Trust Co.*, 370 Pa. 501, 504, 88 A.2d 773, 774 (1952). In an escrow agreement, the holder of the escrow fund is considered an agent for both parties and is bound by the terms of the escrow agreement. *Paul v. Kennedy,* 376 Pa. 312, 315, 102 A.2d 158, 159 (1954). By contrast, a trustee holds the property for the benefit of the beneficiary, not for the benefit of both parties. *In re Mushroom Transp.*, 282 B.R. at 817.

In the matter before me, the plain language of the stipulation indicates that the parties intended to create an "escrow account," not a trust. Given the significant distinctions between the two instruments, there is no merit to Wirth's argument that Debtor's counsel held the funds in trust either for him or for the taxing authorities.

Further, there is some doubt as to whether an effective escrow agreement was created. The stipulation does not specify the disposition of the funds upon the happening of a contingency or the performance of a condition. Although it may be implied that the funds held in escrow were to be used to pay real estate taxes if Debtor otherwise failed to pay them, the stipulation fails to explicitly address the issue. Under the terms of the stipulation, if Debtor failed to deposit funds with his attorney and the default were not cured, Wirth could certify default and obtain relief

5

from the stay to pursue state law remedies against real property. This is what occurred; the stipulation was enforced according to its terms.

## Conclusion

The escrow account was created post-petition and pre-conversion to pay tax claims. It was not created as a trust. Even if the funds were held in escrow, title never passed from Debtor to either the taxing authority or Wirth. When the case converted to one in Chapter 7, the funds held by Debtor's counsel became an asset of the Chapter 7 estate. Therefore, Wirth's demand that the funds be paid over to the taxing authorities or to him must be denied. An appropriate Order will be entered.

**By the Court,**

*Mary D France*

Chief Bankruptcy Judge

Date: August 10, 2011

Case 1:10-bk-07357-MDF   Doc 77   Filed 08/10/11   Entered 08/10/11 14:08:24   Desc
Main Document      Page 6 of 6